**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

NEW CINGULAR WIRELESS PCS, LLC,

     Plaintiff,

vs.                                      No. 1:13-CV-01056-JAP-SMV

COUNTY OF BERNALILLO,
NEW MEXICO,

     Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

This case concerns Plaintiff New Cingular Wireless PCS, LLC's (known in this litigation by the name of its corporate parent AT&T) efforts to construct a cellular tower in the East Mountains. *See* Complaint, Doc. No. 1. Defendant denied Plaintiff's application for a special use permit to construct the tower on September 27, 2013. *See* Doc. No. 1-1. Plaintiff's complaint asserts claims against Defendant under the Federal Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* and New Mexico law. Plaintiff's complaint alleges that the denial of its application for a special use permit was (1) unsupported by substantial evidence; (2) an effective prohibition on the provision of wireless services in the area the tower is to be located; and (3) arbitrary and capricious.

Plaintiff now asks the Court to allow it to pursue a claim against Defendant that is not mentioned in the Complaint. Plaintiff filed a MOTION FOR SUMMARY JUDGMENT ON TELECOMMUNICATIONS ACT, 47 U.S.C. § 332(C)(7)(B)(I)(I): UNREASONABLE DISCRIMINATION (Doc. No. 57) which this Court summarily denied for failing to comply with this District's page limits on motions. *See* MEMORANDUM OPINION AND ORDER

(Doc. No. 70). But before the Court denied Plaintiff's motion, Defendant filed a MOTION TO

STRIKE (Doc. No. 69), in which Defendant argued that Plaintiff's motion sought summary

judgment on a claim that is nowhere to be found in the Complaint.

Defendant withdrew the motion to strike after the Court denied Plaintiff's motion for

summary judgment without prejudice. But Plaintiff was aware that Defendant did not believe

Plaintiff had asserted a claim it now seeks summary judgment on. So on December 2, 2014,

Plaintiff filed a MOTION TO AMEND/CORRECT COMPLAINT OR TO TREAT

COMPLAINT AS AMENDED (Doc. No. 67). On December 16, 2014, Defendant filed

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO TREAT COMPLAINT AS

AMENDED OR TO AMEND COMPLAINT ("Response") (Doc. No. 82). On January 2, 2015,

Plaintiff filed a REPLY (Doc. No. 84). Plaintiff seeks to amend its complaint to assert a claim

against Defendant that it unreasonably discriminated among providers of functionally-equivalent

wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) ("the unreasonable discrimination

claim"). For the reasons that follow, the Court will deny Plaintiff's motion.

## DISCUSSION

Plaintiff's Motion to Amend implicates both FED. R. CIV. P. 15, which governs motions

to amend pleadings, and FED. R. CIV. P. 16(b)(4), which states that a court's scheduling order

"may be modified only for good cause and with the judge's consent." *See* D.N.M. LR-Civ. 16.1

("Modification of deadlines in the Court's scheduling orders and trial notices, whether or not

opposed, requires a showing of good cause and Court approval."). Once the deadline for

amending pleadings in a scheduling order passes, a party seeking amendment must demonstrate

good cause as an initial matter under Rule 16(b)(4) and then that amendment is warranted under

Rule 15. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir.

2014). In order to show good cause to modify the scheduling order, a party must show that the order's requirements "'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Rowen v. New Mexico*, 210 F.R.D. 250, 252 (D.N.M. 2002) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

The deadline for amending pleadings has long passed. *See* Doc. No. 17 (Scheduling Order) (setting February 19, 2014 deadline for amending pleadings). Thus, while Plaintiff does not necessarily style them as such, its arguments that it should be allowed to amend its complaint are in essence arguments that it has good cause to justify modification of the scheduling order. Plaintiff makes two arguments in this regard: (1) Defendant impliedly consented to trying the unreasonable discrimination claim by submitting its own evidence and argument on that claim in its MOTION FOR SUMMARY JUDGMENT (Doc. No. 58); and (2) amending the complaint to include an unreasonable discrimination claim would not cause prejudice because Defendant knew of Plaintiff's intent to pursue the claim prior to the close of discovery. The Court will address each argument in turn.

## A. Defendant did not impliedly consent to try Plaintiff's unreasonable discrimination claim.

Under Rule 15(b)(2), a pleading may be amended to include an issue that "is tried by the parties' express or implied consent." Plaintiff argues that Defendant impliedly consented to try the unreasonable discrimination claim by mentioning the claim in its motion for summary judgment (Doc. No. 58) and attaching evidence that Defendant approved other applications to construct wireless telecommunications facilities. The Court is not entirely convinced that Rule

3

15(b) applies at all before trial. [1] Nonetheless, the Court will address Plaintiff's argument that the

Court should allow it to pursue an unreasonable discrimination claim against Defendant because

Defendant impliedly consented to trying the issue.

The Court cannot find any mention of the phrase "unreasonable discrimination" in

Defendant's motion for summary judgment. Plaintiff asserts that Defendant's motion for

summary judgment contains the phrase, "[t]he unreasonable discrimination claim involves

examining whether a local government body treated applications for similarly situated wireless

telecommunications facilities equivalently." *See* Motion to Amend at 4 (ostensibly quoting Doc.

No. 58). But the Court cannot find this sentence anywhere in that motion.

Second, evidence of other carriers' applications is just as relevant to other claims in

Plaintiff's complaint as it is to Plaintiff's putative unreasonable discrimination claim. For

example, the evidence is relevant to Plaintiff's separate claim that Defendant effectively

prohibited the provision of wireless services in Bernalillo County in violation of 47 U.S.C. §

332(a)(7)(B)(i)(II).[2] Evidence that Defendant had approved other proposals would be directly

relevant to Defendant's argument that it had no "general policy that essentially guarantees

rejection of all wireless facility applications…." *T-Mobile Northeast, LLC v. Fairfax Cnty.*, 672

F.3d 259, 266 (E.D. Va. 2010).

---

[1] *Compare Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596 (D.C. Cir. 2001) ("It is an open question whether the Federal Rules permit parties to impliedly consent to "try" issues not raised in their pleadings through summary judgment motions."), *with Ahmad v. Furlong*, 435 F.3d 1196, 1202–03 (10th Cir. 2006) (district court did not abuse its discretion by allowing Defendant to raise the affirmative defense of qualified immunity for the first time in a motion for summary judgment). *Ahmad* is distinguishable because it concerned an affirmative defense rather than a claim. It also concerned a government defendant's assertion of qualified immunity, a defense which courts are especially reluctant to find waived, given its dependence on facts that are often developed during discovery. *See* 1A MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 9A.14[C] (4th ed. 2010).

[2] Defendant would be liable for unreasonable discrimination if it discriminated among functionally-equivalent wireless providers' applications for permits to construct wireless towers. *Nextel West Corp. v. Town of Edgewood, N.M.*, 479 F.Supp.2d 1219, 1229 (D.N.M. 2006). Given the elements of such a claim, it is strange that Defendant would introduce evidence of its approval of other wireless telecommunications firms' applications in order to support its defense, since that evidence would if anything show that Defendant acted favorably towards Plaintiff's competitors.

Plaintiff argues in its Reply that a party's motivation in introducing evidence has no bearing on whether the party has impliedly consented to trying an issue. Plaintiff contends that Defendant's argument that evidence of its processing of other providers' applications is relevant to Plaintiff's other claims is just an attempt at modifying its summary judgment arguments in light of Plaintiff's Motion to Amend. *See* Reply at 4–5. Plaintiff argues that Defendant would have the Court engage in "mind-reading" in order to determine exactly why evidence was submitted. Far simpler, Plaintiff argues, to ask whether Defendant's proffered evidence was related to the unreasonable discrimination claim. If it is, then Defendant impliedly consented to trying the claim by submitting the evidence.

Whatever superficial appeal this view has, the Tenth Circuit has squarely rejected it, holding that when a party introduces evidence that is relevant to an existing claim as well as a claim not raised in the pleadings, there must be some additional evidence of intent to try the non-pleaded claim in order to justify amendment under Rule 15(b)(2). *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1217 (10th Cir. 2000). Plaintiff's sole evidence of consent—submission of evidence relevant to a claim for unreasonable discrimination but also relevant to Plaintiff's effective prohibition and state law claims—cannot suffice to show implied consent. *Koch* is clear on this point: "When the evidence claimed to show that an issue was tried by consent is relevant to an issue already in the case, and there is no indication that the party presenting the evidence intended thereby to raise a new issue, amendment may be denied in the discretion of the trial court." *Id.* (quotation omitted).

Plaintiff cannot justify amendment under Rule 15(b)(2) on a theory of implied consent. First, Defendant did not mention the unreasonable discrimination claim in its motion for summary judgment or introduce evidence clearly relevant to that claim in support of its motion.

Second, the evidence Plaintiff claims that Defendant submitted in anticipation of litigating the

unreasonable discrimination claim is equally relevant to Plaintiff's existing claims. Insofar as a

theory of implied consent could create good cause to modify the scheduling order to allow

amendment, the Court finds Plaintiff's arguments insufficient. Insofar as Rule 15(b)(2) allows

amendment at the summary judgment stage of litigation, Plaintiff has failed to convince the

Court that Defendant impliedly consented to try an unreasonable discrimination claim for the

same reason. Therefore, the Court refuses to exercise its discretion to allow amendment under

Rule 15(b)(2).

### B.  Plaintiff has failed to show that Defendant would not suffer prejudice by allowing amendment at this time.

Plaintiff next argues that amending the complaint is proper under Rule 15(b)(1), which

allows amendments to pleadings in order to defeat a relevance objection at trial, but only if

amendment "will aid in presenting the merits and the objecting party fails to satisfy the court that

the evidence would prejudice that party's action or defense on the merits." FED. R. CIV. P.

15(b)(1).[3] Plaintiff argues that allowing it to seek a claim for unreasonable discrimination will

not prejudice Defendant because Defendant was on notice of its unreasonable discrimination

claim when, on September 3, 2014, Plaintiff filed a request under IPRA (Inspection of Public

Records Act, N.M. STAT. ANN. § 14-2-1 *et seq.* (West 2013)) seeking Bernalillo County records

of wireless telecommunications facility applications. Motion to Amend at 5.

Defendant responds that while the IPRA request did seek records of other companies'

applications, the request was not specific enough to give Defendant notice that Plaintiff was

pursuing an unreasonable discrimination claim. Response at 9. At first blush, it would seem that

---

[3] As the Court has already stated, it is unclear that Rule 15(b) even applies at this stage in the proceedings. *See supra* note 1.

such a request would be much the same as a discovery request which could plausibly convey

notice of an intent to pursue a claim that was not pleaded in the complaint. And it is not

unreasonable to conclude that a request for *all* records from *all* companies to construct wireless

telecommunications facilities in Bernalillo County would give a reasonable person in the

Defendant's position notice of Plaintiff's intent to pursue an unreasonable discrimination claim.[4]

But Plaintiff's argument that such a request can suffice to convey this notice assumes too

much. Under Rule 8, "a *pleading*…need not specify in exact detail every possible theory of

recovery—it must only 'give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests.'" *Thrift v. Estate of Hubbard*, 44 F.3d 348 (5th Cir. 1995)

(emphasis added) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiff's "public records

request notice" argument emphasizes the fair notice half of the equation at the expense of the

qualification that such notice appear in a "pleading." Plaintiff's theory would allow amendment

as long as a party communicates—somehow—its theory of liability to the opposing party. Stated

this way, the dangers of such a rule become apparent. Rather than looking to the actual pleadings

to determine whether a party should have been on fair notice of a claim, the Court would be

forced to inquire into who said what, where, when, and how.

It follows that a state law records request cannot eliminate prejudice stemming from a

late-stage amendment of Plaintiff's complaint. A New Mexico public records request and

pleadings submitted in accordance with the Federal Rules of Civil Procedure are two different

beasts. *Compare* N.M. STAT. ANN. § 14-2-8(A) (West 2013) ("[a]ny person wishing to inspect

---

[4] Such a blanket request for public records would not be relevant to Plaintiff's effective prohibition claim, since a small sample of applications in the recent past would be sufficient to either prove or disprove the existence of a policy prohibiting the construction of wireless towers in Bernalillo County. Nor would this blanket request be relevant to Plaintiff's alternate theory of liability for effective prohibition—that Defendant had prohibited Plaintiff alone from providing wireless services in the relevant area by denying the application at issue in this case. *See* Doc. No. 81 (Plaintiff's Motion for Summary Judgment) at 10–12.

public records may submit an *oral* or written request to the custodian" (emphasis added)), *with*

FED. R. CIV. P. 4(c) (requiring a written summons to be served with a copy of a written

complaint). The designated public records custodian, *see* N.M. STAT. ANN. § 14-2-7 (West

2013), is not necessarily the same as the officer designated for service of process. *See* FED. R.

CIV. P. 4(j)(2)(B) (allowing States to designate the proper official for service of process by law);

N.M. STAT. ANN. § 4-46-2 (West 2013) (designating the County Clerk as the proper designee for

service of process in any legal proceeding against a county). The fact that a public records

request can be made orally to someone other than the County Clerk means it would be highly

unfair to infer that a records request gives fair notice in the same way that a well-pleaded

complaint or a properly served request for discovery might, especially in the absence of

additional evidence.

The fact that a public records request can be made before a complaint is even filed also

means that Plaintiff was not diligent in seeking to comply with the deadlines set out in the

scheduling order. Plaintiff could have sought records relating to its unreasonable discrimination

claim before it even filed the complaint, Plaintiff cannot claim that the information produced by

the public records request could not have been obtained prior to the deadline for filing a

complaint or amending it as a matter of course. In other words, Plaintiff cannot claim that its

public records request was the result of diligent adherence to the deadlines of the scheduling

order while simultaneously claiming that its omission of a claim for unreasonable discrimination

in its original complaint resulted from ignorance of facts that were later uncovered through

discovery.

Defendant has adequately demonstrated that it would be prejudiced by allowing Plaintiff

to assert an unreasonable discrimination claim. Plaintiff has until recently represented to

Defendant (and the Court) that its claims would be decided on the administrative record alone.
*See* Doc. No. 10 (Joint Status Report) at 3 ("The Plaintiff contends that the administrative record constitutes all applicable evidence herein. Therefore, no witnesses are anticipated.").

Allowing Plaintiff to pursue a claim for unreasonable discrimination would result in either one of two equally unappealing outcomes: reopening discovery in order to allow Defendant to prepare a defense to the claim, or forcing Defendant to scramble for information related to Plaintiff's claim on the eve of trial and after it has filed a dispositive motion addressing Plaintiff's other claims. Plaintiff has repeatedly emphasized how important it is to resolve this litigation soon, and this Court agrees. Because Defendant would be prejudiced by amendment at this late stage, and because additional discovery would be required in order to mitigate this prejudice, the Court will exercise its discretion and deny Plaintiff's Motion to Amend.

## CONCLUSION

Plaintiff has failed to show good cause to modify the scheduling order. Therefore, Plaintiff may not seek to amend its complaint under Rule 15(a). Plaintiff has similarly failed to show that Defendant consented to trying a claim for unreasonable discrimination, and therefore cannot amend its complaint under Rule 15(b)(2). Finally, Defendant would be prejudiced by an amendment to Plaintiff's complaint, so amendment under Rule 15(b)(1) would not be appropriate.

The Court ORDERS that Plaintiff's Motion to Amend (Doc. No. 67) is DENIED.

_____

SENIOR UNITED STATES DISTRICT JUDGE